A. L. Carter Lumber Company v. Commissioner.
A. L. Carter Lumber Co. v. Commissioner
Docket No. 109457.
United States Tax Court
1943 Tax Ct. Memo LEXIS 57; 2 T.C.M. (CCH) 1002; T.C.M. (RIA) 43479; November 12, 1943
*57 G. Kibby Munson, Esq., and Palmer Hutcheson, Esq., 537 Woodward Bldg., Washington, D.C., for the petitioner. Samuel G. Winstead, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: Respondent determined deficiencies of $4,007 for 1938 and $1,992.90 for 1939. The deficiencies, to the extent questioned by petitioner, arise from respondent's action (a) in adjusting the basis for gain or loss on the sale of certain improved property by petitioner by the amount of depreciation thereon in prior years not claimed by petitioner in those years, (b) his disallowance of certain deductions taken as representing worthless debts charged off, and (c) his increase of the income of petitioner by the amount of collections received during the taxable years on installment sales made in prior years. Findings of Fact Petitioner is a Texas corporation with its principal office at Beaumont, Texas, and is now in process of liquidation by its stockholders. Its returns for the period here involved were filed with the collector for the first district of Texas. During the years prior to those here involved petitioner was engaged in the lumber buiness at Beaumont, Texas, and *58 the financing and building of homes. To one desiring to build a home it would furnish the necessary material and advance funds to meet the cost of labor, taking a first lien note for the indebtedness due. In 1929 and shortly thereafter, as a result of the general business depression, petitioner found it necessary in many cases to enforce its liens on properties which it had financed and take these over. In many cases the properties to which it took title required repairs and reconditioning and this was done by petitioner, the cost thereof being deducted by it on its returns for the years in which those expenditures were made and these deductions were allowed by respondent as business expenses. All of the properties thus taken over by petitioner were held by it for sale, but, in the meantime, petitioner endeavored to secure tenants, not only for the revenue to be derived, but to secure protection for the properties. A number of the properties were thus rented and petitioner derived a substantial amount of its income during certain of these years from these rentals. In all leases of these properties petitioner required a condition obligating the tenant, in case of the sale of a property *59 by petitioner, to surrender possession to the purchaser within 30 days of notice given. During the years petitioner held these properties, as set out, it did not deduct any amount on its income tax returns as representing depreciation thereon. During the two years here involved petitioner sold a large number of the houses above mentioned and in computing its gain or loss thereon respondent, in determining the deficiencies here in issue, adjusted petitioner's cost basis of the several properties by depreciation computed for the period during which held by petitioner prior to sale. On petitioner's return for the year 1938 a deduction was taken for bad debts in the sum of $8,182.90, of which amount respondent disallowed $4,534.80. The eight items, constituting the total disallowed by respondent, represented in each case the full amount due petitioner from a creditor and in each instance the indebtedness was secured by a second lien on the home. The circumstances under which petitioner had taken these second liens were that in the case of each of these individuals it had financed the building of the home and taken a first lien note for its advances. Later the debtor had secured the *60 refinancing of the loan through the United States Home Owners' Loan Corporation. This corporation was unwilling to advance on these premises the full amount of the encumbrance thereon and arrangement had been made with petitioner to accept the amount which the corporation was willing to advance and for which it took a first mortgage and to take a second lien note for the balance of its indebtedness. Late in 1938 petitioner wrote the Home Owners' Loan Corporation asking the status of its loans in each of these eight cases and was advised in each case the loan was in default, in most instances only with respect to one payment. At the close of 1938 petitioner charged off all of these notes as wholly worthless. It made no investigation as to the value of the property. The Home Owners' Loan Corporation had not foreclosed the mortgage in any instance nor does it appear that it contemplates doing so. Since the year these items were charged off, petitioner was paid in full on one of these loans, has received substantial payments on another, and on a third has made an arrangement with the debtor under which regular payments are being maintained. Prior to the taxable years here involved petitioner *61 made a number of sales of properties held by it, the consideration to be paid on the installment basis, and during the succeeding years its gains on such sales it elected to report on such basis in accordance with section 44 of the Revenue Act of 1936 and prior acts. Petitioner continued to report its profits from these sales on the installment basis up until the year 1936, in which year it accrued on its books all of the income represented in amounts to be collected in the future and included this gain in its return for that year. In that year it sustained a net loss and paid no tax. This change in its accounting system with respect to these sales was made without notifying respondent or obtaining permission for such change. In the taxable years here involved petitioner received certain payments representing deferred payments on the sales in question and in determining the deficiencies for these years respondent included in income the gain represented in such payments. Opinion There is no dispute between the parties as to the amounts here involved, the only question under each of the three issues being the propriety of the action of respondent. With respect to the first issue, *62 petitioner does not dispute the rate of depreciation used nor the amount computed but merely contends that respondent is in error in adjusting its basis for gain or loss by depreciation sustained in prior years which was not taken as a deduction in those years. It is petitioner's contention that it was in the business of selling construction material and financing home building and not in the business of owning rental properties. It is urged that the renting of the several hundred homes which it was forced by circumstances to take over was merely an incident in the efforts made by it to sell these properties and that such properties, during the term held by it, can not be considered as assets "used in the business" and consequently subject to depreciation deductible from gross income. Petitioner is manifestly in error in its contention. During the years in question it was the owner of the properties, it rented them and derived a substantial income from such rentals. Its expenditures for repairs, reconditioning and upkeep of these properties during that time it treated as expenses of its business and its deduction of these expenses was allowed by respondent. Unquestionably these properties *63 were used in petitioner's business for the production of income and were held during that period for the securing of further income represented by gain on resale. The fact that petitioner did not, in prior years, deduct depreciation on these properties makes no difference. The adjustment required by section 113(b) of the Revenue Act of 1938 is for depreciation "allowable." ; affd., , and . It also makes no difference that petitioner was not in the regular business of acquiring properties for the purpose of holding them for rental. Since it did acquire the properties, owned them, and held them definitely for a commercial use, we think it clear that it was entitled to deduct depreciation thereon and that the amounts by which respondent has adjusted the basis of these properties in computing gain or loss on their sales represent, in each instance, depreciation "allowable" in prior years. ; affd., ; *64 ; affd., ; ;; affd., . With respect to respondent's disallowance of deductions taken by petitioner for the total worthlessness of eight notes secured by second liens on real property, it is clear, we think, that petitioner has failed to establish an ascertainment of worthlessness of these items in 1938. Petitioner has merely shown that it charged these off after securing a report from the Home Owners' Loan Corporation showing that each of the property owners was delinquent in payments due on the first mortgage on each of the properties held by that corporation. In nearly every instance the individual was delinquent only in a small amount representing one payment. His prior payments had been made and the loans by the corporation had run for some years. Consequently, the principal indebtedness had been, in each instance, reduced and the equity in the property available for the satisfaction of the indebtedness due petitioner *65 increased. The officer of the petitioner who testified as to these items and his charge-off of them admitted that he made no investigation to determine the value of the several properties securing the indebtedness and, in most cases, there is no evidence that petitioner made any investigation as to the individual worth of the debtor. No condition is shown as existing in 1938 which, in our opinion, would justify a conclusion that any one of these notes was wholly worthless. In fact, one of the properties sold shortly thereafter for an amount in excess of the total of the indebtedness due to the Home Owners' Loan Corporation and petitioner and the note held by the latter was satisfied in full. In another instance a substantial recovery was made on the indebtedness as a result of suit against the debtor and a recovery of a portion of the judgment out of other property owned by him. In a third instance the debtor refinanced his obligation to petitioner and is meeting his payments regularly. It is our conclusion that the debts deducted and represented in this disallowance by respondent were not ascertained to be wholly worthless when charged off and respondent's action is sustained. *66 The remaining issue is upon respondent's inclusion in income for the two years here involved of a gain represented in payments received by petitioner in those years on in stallment sales made by it prior to 1936 and in respect to which it elected to report the gain upon the installment basis. These gains were so reported prior to 1936 but in that year, without notifying respondent or obtaining permission to make such change, it accrued as a profit then realized the gain represented in installments not yet due. It returned such gain as income in that year. The gain so included was offset by losses sustained in that year and, consequently, petitioner by its action excaped tax upon this income. The rule is clear that an election to report income upon the installment basis, under section 44, supra, binds the taxpayer to the continued use of this method of accounting unless permission to change is granted. The election is binding not only upon the taxpayer but is binding upon respondent as well. ; ; *67 ; affd., . Petitioner having once elected to report this income on the installment basis must take the consequences of such action and may not change its basis so as to meet a situation existing in some year which will, by the change, permit it to escape the tax which it would otherwise be required to pay. Respondent's action is approved. Decision will be entered for the respondent